PSUTKA v. MICHIGAN ALKALI CO.

1. MASTER AND SERVANT—PENSION AND DEATH BENEFIT PLAN—
   CONSIDERATION.
      Pension and death benefit plan for employees to which they
      contributed no monetary consideration *held*, a contract sup-
      ported by ample consideration in the attraction of more
      competent workmen, inducement of better and more continuous
      services and avoidance of expense of labor turnover.

2. SAME—DEATH BENEFIT PLAN—CONFLICTING CLAUSES.
      Rule under a death benefit plan specifically providing for pay-
      ment to dependents according to period of employment *held*,
      controlling although it conflicted with subsequent clause de-
      claring plan constituted no contract.

3. CONTRACTS—CONFLICTING CLAUSES.
      Rule that first of conflicting clauses in an instrument shall be
      received and latter rejected applies only where it is impossi-
      ble fairly to reconcile such clauses.

4. MASTER AND SERVANT—DEATH BENEFIT PLAN—AMBIGUITIES.
      Death benefit plan for employees must be read as a whole and
      ambiguities resolved against employer.

5. SAME—ACCRUED DEATH BENEFITS.
      Under death benefit plan of employer for employees when read
      as a whole, former's reservation of right to change the rules
      and declaration that plan constituted no contract *held*, not
      intended to permit employer to deprive dependents of deceased
      employee of accrued death benefits.

NORTH, C. J., and WIEST and EDWARD M. SHARPE, JJ., dissenting.

Appeal from Wayne; Richter (Theodore J.), J.
Submitted October 9, 1935. (Docket No. 41, Cal-
endar No. 38,475.) Decided January 6, 1936.

Assumpsit by Anthony Psutka and wife against Michigan Alkali Company and Wyandotte Transportation Company, corporations, for sums accrued under a death benefit plan. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Sol Blumrosen,* for plaintiffs.

*Woodruff, BeGole & McInerney (Frank W. Atkinson,* of counsel), for defendants.

FEAD, J. Ample consideration to defendants to support their benefit plan as a contract with their employees is found in the attraction of more competent workmen to defendants' employ, the inducement of better and more continuous service and the avoidance of expense of labor turnover.

The promises of the plan to pay pensions to certain employees are as positive as the engagements in ordinary insurance policies. Other promises are expressly made discretionary. And there is a general provision that pensions may be withheld or terminated in case of misconduct of beneficiaries or for other cause sufficient in the judgment of the committee. The death benefit rules, which are separately set up, are positive in their promises, definite in their conditions, and do not commit the payment to the judgment or discretion of anyone. They incorporate pension rules 23, 24, 25 and 26 by reference. The incorporation is not wholly consistent with the declared purpose of rule 24, that the plan is a voluntary provision ''for the benefit of employees superannuated or totally incapacitated after long and faithful service,'' because the death benefit rules provide specifically for payment to dependents according to the period of employment,

with a minimum of six months and without reference to the character of the service.

If rule 24 wholly negatives the contractual character of the plan, it conflicts with the clauses for death benefits and, under the rule that the first of the conflicting clauses in the instrument shall be received and the latter rejected, 13 C. J. p. 535, 6 R. C. L. p. 847, rule 24 must fall. However, the rule of conflicting clauses applies only where it is impossible fairly to reconcile them.

To disregard the positive promises and permit rule 24 to dominate the instrument is to brand the plan as a deceptive gesture of ostensible generosity, works a result repugnant to the general purpose of the instrument, and ignores the rule that the plan must be read as a whole and ambiguities resolved against defendants. If rule 24 is given the effect claimed, rules 25 and 26 were wholly superfluous. It is to be noted also that, while the right to change the rules is reserved to defendants, there is no suggestion of a right to pay or withhold payments in individual cases of death. Reading the plan as a whole and under established rules of construction, the reasonable interpretation, as well as the evident purpose of defendants, is that the quoted sections were intended to exclude claims of *inchoate* rights under the plan, not to mulct the employees or their dependents of *accrued* death benefits.

Reversed, with costs to plaintiffs, and remanded for trial upon the issue of fact.

BUTZEL, BUSHNELL, and POTTER, JJ., concurred with FEAD, J.

EDWARD M. SHARPE, J. (*dissenting*). During the year 1928, Anthony Psutka, the son of plaintiffs, was employed by the defendants as a sailor, and

continued in their employ until July 4, 1931, when he died from causes which would not entitle him to compensation under the workmen's compensation act.* At the time Anthony Psutka began his employment with the defendant companies, there was in operation by them a "pension and death benefit plan" to which the employee contributed nothing. The pertinent parts of the plan are as follows:

Rule 1 of the death benefit rules fixes the amount, based upon the length of employment, to be paid by the defendants to the employee's dependents, while rule 3 defines "dependents" as "parents * * * who were in whole or part dependent on the deceased at the time of his or her death."

Pension rules 23, 24, 25, and 26 apply alike to both the pension and death benefit plan:

"23.  In order that direct personal relations with retired employees may be preserved and that such employees may continue to enjoy the benefits of pensions granted them, no assignment of pensions will be permitted or recognized under any circumstances; neither shall pensions be subject to attachment or other legal process for debts of the beneficiaries.

"24.  This pension plan is a purely voluntary provision for the benefit of employees superannuated or totally incapacitated after long and faithful service, and constitutes no contract and confers no legal rights upon any employee.

"25.  Neither the creation of this plan nor any other action at any time taken by the committee shall give to any employee a right to be retained in the service, and all employees remain subject to discharge to the same extent as if this pension plan had never been created.

"26.  These pension rules may be changed by the associated companies at their discretion."

* 2 Comp. Laws 1929, § 8407 *et seq.*—Reporter.

Plaintiffs, parents of Anthony Psutka, brought action to recover as beneficiaries under the plan. When the cause came on for trial and at the close of the plaintiffs' opening statement, the defendants made a motion for a directed verdict on the ground that the entire plan did not constitute a contract between employers and employee because of lack of consideration for the promise on the part of the defendants. The motion was granted by the trial judge, and a judgment of "no cause for action" entered; plaintiffs appeal.

Plaintiffs rely upon the unilateral contract theory and claim that the provisions of the "plan" constitute an offer on the part of the defendants to pay a sum stated in event of death of the employee while in defendants' employ and from causes other than those covered under the compensation law, and for continuous and faithful service to defendants; that the continued and faithful service of deceased up to the time of his death evidenced his intention to accept the offer and was the act requested by the offer; and that defendants' offer is supported by consideration. It is plaintiffs' theory that the deceased's refraining from leaving defendants' employ with the corresponding benefit to defendants constituted consideration.

On the other hand, defendants claim that the offer was purely voluntary and did not apply to all employees, but only to those superannuated, totally incapacitated or dying while in the employ of defendant corporations *after long and faithful service;* and specifically that it was not promulgated as an inducement for them to enter the employ of the defendants or remain in their employ.

The legal position of a death benefit fund depends on the instrument in which it is expressed. Whether

it is an enforceable contract or a mere gratuity depends, of course, upon the terms under which it is granted and the considerations inducing the grant. The many and variable factors involved have led, naturally enough, to conflicting conclusions in the decisions, making it impossible to lay down any absolute rule on the question. 96 A. L. R. 1093.

Counsel for plaintiffs cites the following cases to substantiate his contention that the provisions of the pension and death benefit plan coupled with the employment of plaintiffs' decedent establish a contractual relationship. *Zwolanek* v. *Baker Manfg. Co.,* 150 Wis. 517 (137 N. W. 769, 44 L. R. A. [N. S.] 1214, Ann. Cas. 1914 A, 793); *Roberts* v. *Mays Mills,* 184 N. C. 406 (114 S. E. 530, 28 A. L. R. 338); *H. S. Kerbaugh, Inc.,* v. *Gray,* 129 C. C. A. 326 (212 Fed. 716); *Scott* v. *J. F. Duthie & Co.,* 125 Wash. 470 (216 Pac. 853, 28 A. L. R. 328). We have examined these cases and in none of them do we find provisions similar to paragraph 24 in the case at bar. The provisions in the cases above cited provide for extra compensation for continuous service for a specific time and under specific conditions.

There can be no doubt that in the instant case the object of the plan was to benefit employees superannuated or totally incapacitated after long and faithful service and to provide assistance for the dependents of persons dying in their employ, if in the judgment of the committee to which each individual case would come for consideration the provisions of the plan should be applied. Likewise, it can be said that there was no intent upon the part of the employers to create any legal rights in favor of the employees. The acceptance of this plan by an employee through continuous service with defendant companies was a recognition that the plan

did not constitute a contract nor confer any legal rights upon him. Under this plan the right was reserved to decide whether an individual employee had complied with the intent of the plan and had performed faithful services during the term of his employment.

It is a general rule that if the parties to an agreement stipulate that their writing, which in all respects appears to be a contract, is not to be a contract, the courts will not enforce it; or if the writing contains stipulations against legal effect, courts will refuse to enforce such writings as contracts. *Martin* v. *Monroe,* 107 Ga. 330 (33 S. E. 62) ; *Barnard* v. *Cushing,* 4 Metc. (45 Mass.) 230 (38 Am. Dec. 362).

The instant plan did not constitute a binding agreement between employers and employee. There was no intent upon the part of the employers to enter into a binding legal obligation. It was nothing more than a benevolent plan, the practical results of which the employers could at their discretion carry out or not.

The judgment of the lower court should be affirmed, costs to defendants.

NORTH, C. J., and WIEST, J., concurred with EDWARD M. SHARPE, J.

The late Justice NELSON SHARPE took no part in this decision.