[No. 33255. Department Two. September 15, 1955.]

ROBERT W. SPOONER et al., Respondents, v. RESERVE LIFE
INSURANCE COMPANY, Appellant.[1]

*Bogle, Bogle & Gates,* for appellant.

*Carr, Tuttle & Campbell, Carl G. Koch,* and *Coleman P. Hall,* for respondents.

[1]Reported in 287 P. (2d) 735.

HILL, J.—This appeal is from a judgment in favor of the plaintiff-respondents for the amount of bonuses to which they claim they are entitled for the period from February 29, 1952, through February 28, 1953. The respondents were, during that time, agents of the appellant insurance company.

The following bulletin was issued by the appellant on February 29, 1952, to the respondents and other agents. (The italicized portions herein appear as underscored words in the bulletin as issued.)

"BULLETIN #160
"To: All Staff Members in Oregon, Washington, Colorado, Nebraska, Florida & North Carolina:

EXTRA EARNINGS AGREEMENT

"Your Company has grown in size—premium wise—in the industry *from 421st place to 4th of its kind in five short years.*

"That all-time record, we believe, speaks for itself. But what does it mean to You?

"It means that you offer a 'preferred' product. Because of the values *your* product provides, *and because of the promotional effort behind it,* people tend to select *your* Company.

"Your Home Office folks are well aware, however, that you in the field must enjoy a sense of real security and see the road of the future stretching clearly ahead. Our association must be mutually profitable and pleasant. We hope to make your job more interesting and that you will earn more money than you could anywhere else.

"Now, in addition to present substantial commissions, we are announcing your Renewal Bonus Plan *which provides extra earnings.* This has been a long time in the making. It is, we believe, superior to anything of its kind ever introduced.

"Reserve wants *career* men—men who are as much concerned about *next year* as *next month.* To attract such workers, and inspire their best efforts, your Company now puts into effect a schedule of *Bonus Payments.*

"Your *Renewal Bonus* earnings will depend upon the QUALITY of your business as well as the amount. If you do a good job, you will earn a substantial income. If you do an *outstanding* job, you will be *very handsomely* rewarded.

"You will receive at the end of each 12 month period, a bonus in accordance with the following schedule:

| "IF YOUR LAPSE RATIO IS | | | YOU WILL | | OF YOUR AVERAGE MONTHLY PREMIUMS IN FORCE |
|---|---|---|---|---|---|
| " | 0 to 10% | | RECEIVE | 150% | " |
| " | 10 to 20% | | " | 125% | " |
| " | 20 to 30% | | " | 100% | " |
| " | 30 to 40% | | " | 80% | " |
| " | 40 to 50% | | " | 60% | " |
| " | 50 to 60% | | " | 50% | " |
| " | 60 to 70% | | " | 40% | " |
| " | over 70% | | " | none | " |

"This renewal bonus is a *voluntary* contribution on the part of the Company. It is agreed by you and by us that it may be withheld, increased, decreased or discontinued, individually or collectively, with or without notice. Further, this Renewal Bonus is contingent upon you actually writing business for this Company as a licensed agent at the time such Bonus is paid.

"It will be paid once a year—on the mean amount of your business in force. This annual method of payment cuts down the cost of keeping records. Also—*and most important*—during the year the *boys are separated from the men.* The boys will get no bonus. THAT LEAVES MORE FOR THE MEN.

"In return, I ask only that you give me your best efforts. That means that you will sell your business cleanly and strictly on the merits of the policy itself, and follow the letter and spirit of the Company's rules and practices.

"Twelve months from now the Accounting Department will get busy and tote up the amount of business you have in force which is produced by you from the date of this agreement. They must get out the lapses and put the reinstatements back in. All that takes time. But your first Renewal Bonus check will be sent to you as quickly as humanly possible after the 12 months is up.

"If you welcome these EXTRA EARNINGS, and I know you will, and to avoid any possible future misunderstanding, sign the enclosed copy of this agreement and hand it to your Manager who will send it to me.

"Remember: Nothing succeeds like Success!

"C. C. Bradley [signed]
C. C. Bradley
Vice President

"CCB:jl

---------------------------------------------------------------

Signature of Staff Member"

If this bulletin was a promise to pay a bonus under certain conditions, it must be found that the respondents met

those conditions by remaining with the appellant and selling insurance, maintaining a lapse ratio of twenty to thirty per cent. The pivotal question here is whether this bulletin contains an enforcible promise of a bonus if its conditions are met or, by reason of the following paragraph, presents only an illusion of a promise:

"This renewal bonus is a *voluntary contribution* on the part of the Company. It is agreed by you and by us that *it may be withheld*, increased, *decreased* or discontinued, individually or collectively, with or *without notice*. Further, this Renewal Bonus is contingent upon you actually writing business for this Company as a licensed agent at the time such Bonus is paid." (Italics ours.)

We are not here concerned with a conventional bonus case such as *Scott v. J. F. Duthie & Co.* (1923), 125 Wash. 470, 216 Pac. 853. In that case, it was held that the offer and the performance of the conditions of the offer constituted an enforcible contract, the employer having procured, in addition to the faithful and efficient service to which he was entitled under the employment of the employee for an indefinite term of service, continuity of service for the period designated in his offer. Extensive annotations covering bonus cases of this character are found in 28 A. L. R. 331, 346.

Nor are we here concerned with the rarer but still enforcible bonus cases in which there is a purely gratuitous promise by the employer which induces action of a definite and substantial character on the part of the employee. The applicable rule in such cases is well stated in 1 Restatement, Contracts 110, § 90, which reads as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

We recognized and discussed this rule in *Luther v. National Bank of Commerce* (1940), 2 Wn. (2d) 470, 98 P. (2d) 667; *Hazlett v. First Fed. Sav. & Loan Ass'n* (1942), 14 Wn. (2d) 124, 127 P. (2d) 273; *State v. Northwest Magnesite Co.*

(1947), 28 Wn. (2d) 1, 182 P. (2d) 643; *Hill v. Corbett* (1949), 33 Wn. (2d) 219, 204 P. (2d) 845. For application or discussion in employer-employee cases, see *Hunter v. Sparling* (1948), 87 Cal. App. (2d) 711, 197 P. (2d) 807; *West v. Hunt Foods, Inc.* (1951), 101 Cal. App. (2d) 597, 225 P. (2d) 978; *Hughes v. Encyclopaedia Britannica* (1954), 1 Ill. App (2d) 514, 117 N. E. (2d) 880; *Langer v. Superior Steel Corp.* (1932), 105 Pa. Super. 579, 161 Atl. 571.

■ But before this rule can be applied, there must be a real promise to be enforced. Action in reliance upon a supposed promise creates no obligation on an individual or corporation whose only promise is wholly illusory. 1 Corbin on Contracts 658, § 201. Appellant insists that no enforcible promise to pay a bonus is contained in the bulletin. Our problem, as we have heretofore indicated, is whether the paragraph referred to, and particularly the portion reserving a right to decrease or withhold the bonus, makes an illusory promise of what would otherwise be an enforcible one.

■ A supposed promise may be illusory because it is so indefinite that it cannot be enforced *(Ford Motor Co. v. Kirkmyer Motor Co.* (1933), 65 F. (2d) (C. C. A. 4th) 1001), or by reason of provisions contained in the promise which in effect make its performance optional or entirely discretionary on the part of the promisor. *Fontius Shoe Co. v. Lamberton* (1925), 78 Colo. 250, 241 Pac. 542; *Fickling v. Pollard* (1935), 51 Ga. App. 54, 179 S. E. 582; *Hughes v. Encyclopaedia Britannica, supra; Johnson v. Schenley Distillers Corp.* (1942), 181 Md. 31, 28 A. (2d) 606; *Muir v. Leonard Refrigerator Co.* (1934), 269 Mich. 406, 257 N. W. 723; *McNevin v. Solvay Process Co.* (1898), 32 App. Div. 610, 53 N. Y. S. 98; *Dolge v. Dolge* (1902), 70 App. Div. 517, 75 N. Y. S. 386; *Harding v. Montgomery Ward Co.* (1944) (Ohio App.), 58 N. E. (2d) 75; *Webster v. Southwestern Bell Tel. Co.* (1941) (Tex. Civ. App.), 153 S. W. (2d) 498; 1 Williston on Contracts (Rev. ed.) 123, § 43.

■■ Respondents here have received their regular commissions. Appellant by its bulletin announced a voluntary contribution over and above those commissions. There can

be no question but that the appellant was entitled to impose such conditions and terms on the payment of this voluntary bonus as it desired. The bulletin told the respondents in plain English that the company could withhold or decrease the bonus, with or without notice. The usual and ordinary meaning of "withhold" is "to refrain from paying that which is due." *Dupuy v. Board of Education* (1930), 106 Cal. App. 533, 537, 289 Pac. 689. "Withhold" cannot be construed to apply only to future, unearned bonus payments.

We do not defend what the appellant has done here. We think the trial court correctly applied the formula set out in the bulletin, and that the respondents have reason to be dissatisfied with what appellant has paid them. Nevertheless, it cannot be said. that there has been a breach of a binding contract to pay a bonus. Appellant, while perilously near the perpetration of a fraud in the position it takes here, is still acting within the terms of its bulletin, in which it incorporated language that permitted it to withhold the bonus which it seemed to promise. We cannot disregard or suppress any of those terms. *Bernard v. Triangle Music Co.* (1939), 1 Wn. (2d) 41, 48, 95 P. (2d) 43, 126 A. L. R. 558. The agents of the appellant had no choice but to accept the offer of a bonus with all the terms and limitations placed upon it, and if they were in any instance induced to stay with the company until the termination of the bonus period, it was because they were relying on the corporate conscience of the appellant and not upon an enforcible contract. There is a natural aversion to such one-sided propositions, but we cannot delete terms or words from an offer, nor can we ignore them, to make a binding contract for the parties where none exists.

We have given careful consideration to the three cases on which the respondents place their principal reliance on this phase of the case. *Tilbert v. Eagle Lock Co.* (1933), 116 Conn. 357, 165 Atl. 205; *Psutka v. Michigan Alkali Co.* (1936), 274 Mich. 318, 264 N. W. 385; *Mabley & Carew Co. v. Borden* (1935), 129 Ohio St. 375, 195 N. E. 697. To these may be added three other cases in which bonus or pension provisions

were upheld despite language which seemingly excluded contractual liability. *Wellington v. Con P. Curran Printing Co.* (1925), 216 Mo. App. 358, 268 S. W. 396; *Schofield v. Zion's Co-op. Mercantile Institution* (1934), 85 Utah 281, 39 P. (2d) 342, 96 A. L. R. 1083; *George A. Fuller Co. v. Brown* (1926), 15 F. (2d) (C. C. A. 4th) 672. All three cases cited by respondents were death-benefit cases, the actions being not by the employees but by their named beneficiaries. The first two, the *Tilbert* and *Psutka* cases, were recently distinguished in *Hughes v. Encyclopaedia Britannica, supra* (p. 519), the court there pointing out that:

"In these cases employers' death-benefit programs which were unenforceable as contracts by their express terms were treated as contracts in order to avoid the otherwise harsh result of depriving an employee's beneficiary of accrued death benefits. We do not believe that the reasoning of these cases can be applied to the factual situation at bar."

What was said there applies with equal force to the *Mabley & Carew Co.* case. In other cases, in order to avoid seemingly harsh results and to shape the end result a little nearer to the courts' desire, plain language which made supposed promises illusory was ignored or so interpreted as to import enforcible promises. No case has been cited to us, nor have we discovered any, in which the right to a bonus has been upheld in a situation in which the employer reserved the right to withhold it.

The judgment is reversed, and the trial court is instructed to enter a judgment of dismissal.

HAMLEY, C. J., MALLERY, FINLEY, and ROSELLINI, JJ., concur.