Jack L. ALBERTSON et al.,
Plaintiffs-Appellants,

v.

RALSTON PURINA COMPANY,
Defendant-Respondent.

No. KCD 29998.

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

Don Witt, James D. Boggs, Witt & Shafer, Platte City, for plaintiffs-appellants.

Jerome T. Wolf, Jack L. Whitacre, Michael F. Delaney, Spencer, Fane, Britt & Browne, Kansas City, for defendant-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Forty-three former employees of Ralston Purina Company brought suit to recover separation pay and damages for loss of stock purchase rights. The court sustained Purina's motion for summary judgment and the former employees appeal.

On this appeal the former employees contend the written policies of Purina constituted a valid contract under which they were entitled to separation pay and damages for termination of their stock purchase rights. Affirmed.

All of the plaintiffs were salaried employees with Purina at its turkey processing plant in California, Missouri. In February, 1975, Purina sold the plant to Cargill Company and the employees were terminated by Purina on the effective date of the transfer of ownership. One of the plaintiffs testified by deposition that he remained with Cargill in the same capacity as he occupied with Purina and further stated that all of the plaintiff former employees were employed. It is a fair inference from the record that all of the plaintiff former employees remained employed at the same plant by Cargill.

At the time of the transfer of ownership Purina had in effect an employee relations policy and procedure for separation gratuity for sales, administrative and clerical employees. The parts of that policy applicable to this suit in effect in February, 1975, were as follows:

POLICY

It is the policy of Ralston Purina Company to grant, in *limited* and *exceptional* cases, a gratuity to a separated employee. The purpose of this gratuity is to assist the former employee during a period of financial need as he bridges the gap between his former employment and his future employment.

APPROVALS

Authority for approval of the request rests with the appropriate Corporate Officer or his designate.

PROCEDURES

1. Each individual request for the grant of a gratuity under this policy shall originate, in writing, by line or field management setting forth the reasons for the request, the extent of the request, the amount of the request, and the factors considered in support of the recommendation. This request should be submitted to the appropriate Corporate Officer or his designate, who in turn will submit it to the Secretary, Pension and Welfare Plan Committee.

The Secretary, Pension and Welfare Plan Committee shall be advised of all approvals, in whole or in part, or rejections. He shall report to the Corporate Pension and Welfare Plan Committee on all cases by division. Through this report, the Corporate Pension and Welfare Plan Committee shall monitor the uniformity of implementation of this policy throughout the Corporation.

2. *Factors to be Considered when Determining Whether a Gratuity is Recommended, and, if so, the Amount Thereof.* The following are the principal factors which should be weighed in determining whether to recommend a gratuity and the amount thereof. These are not to the exclusion of other relevant factors and consideration on a case-by-case basis.

a. *Age*

Current experience indicates that the difficulty and length of time involved in locating new employment increases after age forty and increases severely after age fifty.

b. *Obsolescence of Skills or Training*

The marketability of employee's skills and training and experience in the current job market should be evaluated and weighed.

c. *Physical Status*

Where the termination involves physical capability over which the employee has little or no control, this factor should be given *maximum* consideration. The Manager, Employee Benefits Department should be contacted to explore whether any of the features of the Company's various programs might also have applicability.

d. *Discontinuation of a Facility or Phase of the Corporation's Business*

Where this factor is involved and transfer is either not offered or refused for reasonable considerations, this factor should be given substantial consideration.

e. *Length of Continuous Service*

Although no specific formula will be followed, the greater the length of continuous service, the greater shall be the consideration toward the maximum grant, keeping in mind the purpose stated above, which is to fulfill a financial need while bridging the gap between careers. Thus, extensive years of continuous service does not necessarily mean maximum gratuity.

f. *Disciplinary Type Terminations*

Although all terminations are, in a sense, "for cause," where the reason is of an exaggerated nature, such as drunkenness, theft, rank insubordination, etc., no gratuity should be recommended nor will one be approved.

3. *Conditions of and Extent of Gratuity*

a. No gratuity shall be granted if an employee voluntarily resigns or requests early retirement.

b. The maximum gratuity shall be four months' pay. Any vacation accrued and due the employee at the time of separation shall be paid in addition to the specific gratuity. In addition, the employee must sign a "Separation Agreement" as outlined in (5) below before any gratuity payment is made.

c. At the employee's option, the grant may be in a lump sum amount, monthly installments, or in any other feasible manner where the employee may have personal reasons for requesting the grant in some other manner. The lump sum procedure is preferred. The gratuity is to be charged to the unit submitting the request.

d. It is the intent of this policy that any gratuity, once granted, is without future strings or conditions attached.

4. *Subsequent Review of Hardship Cases*

When the time of a gratuitous grant has expired or is near to expiring, and where the terminated employee is experiencing financial hardship and has not successfully found other employment, despite diligent search, a request for further consideration may be submitted under the procedure set forth in No. 1 above.

The former employees in their petition alleged Purina had granted them rights to purchase stock and to receive severance pay in consideration of their continued employment. The plaintiffs alleged Purina had paid separation benefits to former employees in the past, but had failed and refused to pay the plaintiffs. The petition further alleged Purina had failed to grant the former employees any further rights to purchase stock in the company after the termination of their employment. The petition further alleged that Purina had acted arbitrarily, capriciously and in bad faith when it failed to grant separation pay and to honor their rights to purchase stock.

The stock purchase rights allowed employees to purchase stock in Purina. For every four shares purchased and paid for by the employee, the company would pay for one additional share. Purina had a mandatory retirement age of sixty-five and each of the former employees in this case contended they were entitled to damages for the deprivation of their right to have Purina purchase one share for each four they purchased from the time of their termination until each employee reached the age of sixty-five. They further contended they were entitled to separation pay at a minimum of one week's salary for each full year of completed service. There is no question the employees were terminated without any fault on their part and the termination was solely because of the sale of the plant.

The former employees contend the policy set out above was an offer by Purina to grant separation pay and by continuing in the employ of Purina, each accepted this offer and thereby became absolutely entitled to separation pay upon their termination.

The former employees rely principally upon *Hinkeldey v. Cities Service Oil Company*, 470 S.W.2d 494 (Mo.1971) and *Ehrle v. Bank Building & Equipment Corporation of America*, 530 S.W.2d 482 (Mo.App.1975). Both of these cases recognize, of course, the general rule in this class of case that if the company policy is found to be a valid offer to pay benefits, if the offer is communicated to the employees, and if the employees continue their employment in reliance and acceptance of the offer, then a valid contract exists and the company may not arbitrarily or capriciously withhold the payment of that which it promised. The distinction between those cases and the case sub judice is found in the wording of the policy. In both *Ehrle* and *Hinkeldey* the policy was a general company policy which without question constituted an offer to pay benefits. In *Hinkeldey* the court at 470 S.W.2d 500[1] contrasted a policy which made an offer and those in which an offer was not made when it stated:

> It [the policy] does not say that severance allowances "*may* be provided" but says "*are* provided." It does not say that one week's pay for each completed year of service "*may* be allowed" but says "This schedule *allows* one week's pay, etc." It refers to "This severance allowance" and "such severance allowance"—not to "any severance allowance which may be made."

In short, the court in *Hinkeldey* was drawing a distinction between a company policy which stated a plan had been adopted and benefits would be paid as contrasted with a plan which merely suggested that benefits might be paid.

The necessity for an offer is stated in *Borden v. Skinner Chuck Company*, 21 Conn.Sup. 184, 150 A.2d 607, 610[5] (1958):

> It is basic, however, that there must be an offer upon the employer's part. A mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.

The rule has also been stated in *Spooner v. Reserve Life Insurance Company*, 47 Wash.2d 454, 287 P.2d 735, 738 (1955) that a company policy may be unenforceable "by reason of provisions contained in the promise which in effect make its performance optional and entirely discretionary on the part of the promisor." An examination of the Purina policy readily reveals that it is not an unconditional promise on the part of Purina to pay all of its employees separation pay. In fact, the policy states at the very beginning that separation pay will be paid only in *limited* and *exceptional* cases. The policy clearly is cast in terms which reserve to Purina the decision to request separation pay and to finally act on the request. The policy gives the factors to be considered in determining whether a request for separation pay will be made and the basis on which it will be considered. Nothing in the policy indicates an unconditional offer on the part of Purina to pay any terminated employee separation pay but clearly indicates separation pay will be determined on a case-by-case method with the enumerated factors to be considered in each case in light of the purpose to be accomplished.

A further and perhaps even stronger reason the policy does not afford any separation benefits to the former employees in this case is its stated purpose to assist former employees during a period of financial need between their employment with Purina and the beginning of new employment. Here the former employees' evidence showed that all of them were employed and this was the reason Purina officials in the field did not file any requests for separation pay on behalf of these former employees. The plaintiffs failed to allege in their petition or show by affidavit that they suffered any period of unemployment and thus failed to show they were entitled to be considered for separation pay. Thus, the very purpose of the policy did not come into existence since these former employees did not show a need for assistance between the time of their termination by Purina and their new employment.

The company policy which permitted employees to purchase stock with Purina paying for one share for each four purchased by the employees was limited to employees of Purina. There is nothing in that policy which gives any former employee the right to continue to purchase stock under this plan. Since the plaintiffs in this case are former employees there is no right vested in them to continue to purchase stock with Purina participating in the purchase.

The former employees also contend Purina is obligated to pay separation benefits because of its payment of such benefits to other former employees. There is nothing in the record to indicate that benefits were paid under this policy in violation of its stated purpose or terms and for that reason payment to other former employees did not obligate Purina to pay the former employees in this case. Since an enforceable promise was not made by Purina to the former employees in this case they are not entitled to recover, and payment to other employees would not bring about a different result. *Cottonseed Delinting Corp. v. Roberts Brothers,* 218 S.W.2d 592, 594[3] (Mo.1949). The same result obtains as to the former employees' arguments that Purina failed to correct the erroneous construction which they placed upon the policy. Their final argument that Purina failed to negative its bad faith or arbitrary or capricious conduct in failing to pay benefits is likewise answered when it is found the policy did not constitute an offer and, therefore, no contract between Purina and its employees under this policy came into existence.

The judgment is affirmed.

All concur.