HAMILTON, Circuit Judge,
dissenting.
United's defense here is that the airline's very best customers-its Million Mile Flyers-should have known better than to believe United's promise of "lifetime" benefits. This defense amounts to a confession of consumer fraud. United could not-honestly and legally-promise "lifetime" benefits while reserving the right to cancel its promise at any time and for any *1129 reason. While federal law protects airlines from state consumer fraud laws, our court should not, as a matter of contract law, endorse this deception. I respectfully dissent.
United ran its frequent flyer program, MileagePlus, subject to a reservation of rights. It could change or cancel the benefits at any time for any reason. That reservation of rights may be enforceable as applied to most benefits. But then in 1997, United invited its frequent flyers to aim higher, to seek “lifetime” benefits as Million Mile Flyers: “Lifetime Premier Executive status.”
Plaintiff Lagen flies a lot. He read the offer and started flying primarily on United. By 2006, he reached one million miles and qualified for United’s promised “lifetime” benefits. United congratulated him warmly, and he enjoyed those benefits for several years. But in 2010, in connection with its merger with Continental Airlines, United changed its Million Mile Flyer program in ways that Lagen contends have diminished the rewards he had been promised.
We should reverse summary judgment for United. This case presents a simple example of what the law calls either an option contract (in the Restatement (Second) of Contracts) or a unilateral contract (in the first Restatement of Contracts). An offer of benefits was made. It was intended to invite acceptance by conduct, and acceptance by conduct is sufficient to form a binding contract. See, e.g., Restatement (Second) of Contracts § 45 (1981) (“"Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it.”); Restatement (First) of Contracts § 45 (1932) (“If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract.... ”).
The facts here show the creation of such an option contract. United offered “lifetime” benefits for customers who bought enough tickets to add up to a million miles of travel. Lagen saw the offer and switched from another airline to United. His commitment to United, i.e., his performance that United had invited with its offer, was substantial. It took him nearly ten years and hundreds of thousands of dollars’ worth of United flights to accumulate the one million miles. Lagen thus accepted the offer by his conduct.
He contends United then breached the contract that was created. His theory of contract creation is correct, so this lawsuit should focus on whether and to what extent the changes in United’s “lifetime” benefits for Million Mile Flyers have harmed Lagen and others in the class he seeks to represent.
To avoid these basics of contract law, United relies on the reservation of rights clause in its broader MileagePlus program documents. It argues that Lagen’s status as a Million Mile Flyer is merely one “status” under the broader MileagePlus program. By its reasoning, the airline invokes its right to change those “lifetime” benefits at any time and for any reason, including cancelling them altogether. United admitted as much in oral argument.
This is legal sophistry in defense of consumer fraud. Contract law, however, provides a simple rebuttal. United’s promise of lifetime benefits was obviously inconsistent with its earlier reservation of rights. The later promise, which was intended to and did induce reliance and acceptance by conduct, should trump the earlier reserva *1130 tion of rights by modifying the contract. See generally Orth v. Wisconsin State Employees Union Council 24, 546 F.3d 868, 872 (7th Cir.2008) (contract can be modified by subsequent dealings giving rise to inference of agreement to modify it); In re UAL Corp., 468 F.3d 456, 459 (7th Cir.2006) (United was free to agree with union to modify contract); Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp., 258 F.3d 645, 649 (7th Cir.2001) (under general common law principles, contract modification requires only consideration and acceptance manifested with sufficient clarity). Lagen provided consideration for the modification by spending so much money and flying so many miles on United, just as United hoped he would. At the very least, a jury could find that a reasonable customer would understand United to have meant lifetime when it said “lifetime” and thus to have modified the terms of its MileagePlus program accordingly.
It’s possible, of course, that United simply made an illusory promise, as it argues in court, and that its customers should have understood it was making only a false promise. But that argument depends on a factual premise that supports conflicting inferences, so United is not entitled to summary judgment.
Two elementary legal principles frame the factual dispute. The first supports plaintiff Lagen. It’s the “elementary principle that where a party publishes an offer to the world and before it is-withdrawn another acts upon it, the party making the offer is bound to perform his promise.” Weather-Gard Indus., Inc. v. Fairfield Sav. & Loan Ass’n, 110 Ill.App.2d 13, 248 N.E.2d 794, 798 (1969), citing Restatement (First) of Contracts § 45. The second, urged by United, is that representations made “without intent to create legal relations” do not constitute an offer. McCarty v. Verson Allsteel Press Co., 89 Ill.App.3d 498, 44 Ill.Dec. 570, 411 N.E.2d 936, 943 (1980), quoting Corbin on Contracts § 11 (1950).
Which principle controls here does not depend on United’s subjective intent. Contract law depends not on private and unexpressed intentions but on objective expressions of intent and agreement. E.g., Empro Mfg. Co. v. Ball.Co Mfg., Inc., 870 F.2d 423, 425 (7th Cir.1989). The factual question here is whether, under all the circumstances, a reasonable person in Lagen’s position would have understood that United intended to offer lifetime benefits or instead had reserved the right to change its mind and was offering nothing. Kolodziej v. Mason, 774 F.3d 736, 741-44 (11th Cir.2014) (applying totality of circumstances test to decide whether defendant made serious offer for option or unilateral contract).
A real promise of benefits, an offer, is “an act that leads the offeree,” in this case Lagen, “reasonably to believe that a power to create a contract is conferred upon him.” McCarty, 44 Ill.Dec. 570, 411 N.E.2d at 943, quoting Corbin on Contracts- § 11. United’s view is that no one in Lagen’s position could have reasonably believed that the Million Mile Flyer promise was really an offer to create a contract because any reasonable person should have realized that the Million Mile Flyer promise was subject to the reservation of rights in the MileagePlus program. The majority endorses this view, seeing the factual record as “pointing in only one direction.” But the evidence the majority cites is not overwhelming. Ample evidence supports a different inference.
The best facts for United are these: Only MileagePlus members can qualify as Million Mile Flyers. A congratulatory email to new Million Mile Flyers is sent *1131 from a “United Mileage Plus” email address. Information about the Million Mile Flyer program is found under the Mileage-Plus umbrella on the United website. La-gen’s Million Mile Flyer status was noted on his MileagePlus member card.
Perhaps those sparse facts might have led a legally sophisticated or hyper-vigilant customer to think that United was not serious when it promised “lifetime” benefits. But the legal test is how a reasonable customer would have interpreted the Million Mile Flyer promise in light of all the circumstances.
The most basic and powerful fact is the plain meaning of the word United chose to attract plaintiffs business: “lifetime.” That’s hard to reconcile with “until we change our minds.” .Another key fact is that none of the Million Mile Flyer offers seem to have included even any warning asterisk and fine print telling readers that the airline did not actually mean “lifetime.” (This fact distinguishes this case from a classic illustration of an illusory promise cited in the Restatement (Second). In Spooner v. Reserve Life Ins. Co., 47 Wash.2d 454, 287 P.2d 735, 738 (1955), a bulletin announcing a yearly bonus system for employees could not be construed as an offer for an option contract when that same bulletin also told the employees “in plain English that the company could withhold or decrease the bonus, with or without notice.”)
Also critical to the understanding of United’s offer are the importance of an airline’s loyalty program, the importance of its best customers, and the fact that one could earn Million Mile Flyer status only by spending many years and a great deal of money flying on United. This was an offer designed to attract the best potential customers to shift a high volume of their purchases to United. All of these facts make this case easy to distinguish from the majority’s concerns about a slippery slope leading to lawsuits about vague advertising promises of more legroom or priority boarding.
And it’s not as if United’s promise was like that of a fly-by-night carnival barker offering eternal happiness to anyone who can knock over the bottles. United is a large and seemingly respectable business with a legal staff that presumably reviews such marketing promises. It could be expected to level with its customers, or at least to refrain from deliberately misleading them with a false promise of “lifetime” benefits.
The majority and I agree that some extravagant promises are not meant seriously as contract offers. A recent decision by the Eleventh Circuit provides an example that makes for a useful comparison. In Kolodziej v. Mason, 774 F.3d 736 (11th Cir.2014), á lawyer in a high-profile murder case made an off-the-cuff statement in a television interview: if someone could disprove his client’s alibi, “I’ll pay them a million dollars.” A law student took up the challenge, claimed to have satisfied it, and demanded his million dollars. The lawyer refused to pay. The Eleventh Circuit affirmed summary judgment for the lawyer, applying the same standard of objective reasonableness discussed here. The court found that “I’ll pay them a million dollars” was just off-the-cuff and colloquial hyperbole, a figure of speech to attack the prosecution’s theory rather than a serious offer of a contract. 774 F.3d at 741-42.
The facts here are of course quite different. United’s offer of lifetime benefits was not at all off-the-cuff or a figure of speech. Nor is a lifetime benefit exaggerated or unreasonable for a customer who has flown a million miles on one airline. Based on the facts here, a jury could find that a customer — even one conscious of *1132 the reservation of rights in the more general MileagePlus program — could reasonably conclude that United’s offer of lifetime benefits to its best and most loyal customers was actually intended to provide them with lifetime benefits.
In most businesses, consumers victimized by the shabby tactics United has embraced can turn to their states’ consumer protection statutes. Airlines are different. The Airline Deregulation Act of 1978 preempts claims under state consumer protection laws. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Part of the balance struck by that Act, though, is that it allows customers to sue airlines for breach of contracts, to enforce commitments that airlines have undertaken voluntarily. American Airlines, Inc. v. Wolens, 513 U.S. 219, 230-33, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). That’s what we should do here. But if courts are not willing to hold airlines to the commitments they make, then loyal customers like La-gen must either make enough noise to get the attention of United’s management (perhaps CEO Jeff Smisek or General Counsel Brett Hart) or turn to the United States Department of Transportation for relief.
United could have defended this lawsuit honorably. It could have tried to show that it has in fact fulfilled its promise to plaintiff and other Million Mile Flyers. For now, however, we should reject the defense that the promise was meaningless. We should reverse summary judgment in favor of United and allow plaintiff to pursue his claims in the district court.