354 P.2d 559

Keith D. BULLOCK, Plaintiff and Appellant,

v.

DESERET DODGE TRUCK CENTER, INC.,
a corporation, Defendant and
Respondent.

No. 9193.

Supreme Court of Utah.

July 29, 1960.

**2**

Bean & Bean, Layton, for appellant.

Ray, Quinney & Nebeker, Albert R. Bowen, Salt Lake City, for respondent.

WADE, Justice.

Plaintiff Bullock appeals from a summary judgment dismissing his action for damages from respondent Deseret Dodge Truck Center, Inc., hereinafter called the Company, for breach of a written contract by terminating his employment as general manager of the company on January 13, 1959. He claims that the company agreed to employ him as such manager until the end of January of 1966.[1]

1. Following are the material provisions of that contract:
"This Agreement, made and entered into December 13, 1957, by and between Deseret Dodge Truck Center, Inc., hereinafter referred to as the 'Company',

Plaintiff alleges that when the agreement was consummated he was living in Dallas, Texas, and in reliance on the contract he terminated his employment with the Chrysler Corporation, sold his home, moved his family to Salt Lake City, and thereby incurred expenses, a cut in salary, a loss of executive status, and other benefits. He

and Keith Bullock and Raymond Hunter, hereinafter sometimes referred to as 'Managers', and Hinckleys, Inc., hereinafter sometimes referred to as 'Hinckleys'.

" * * * Hinckleys will supply the initial capital to the Company for the purposes of its business. The Managers will not provide capital to the Company initially and will subscribe only for such shares as will qualify them as directors of the Company. The Company is entering on a new business, the success of which will be dependent in large measure upon the skill and efforts of the Managers. For the purpose of inducing the Managers to exert their best skill and efforts in behalf of the Company, and to assure the Company of their continuous services, the Company desires to make available to them, on the terms and conditions hereinafter set forth, certain of its shares of capital stock * * *."

"1. Hinckleys agree to cause a corporation to be organized under the laws of the State of Utah, with the name of 'Deseret Dodge Truck Center, Inc.', with a capital of One Hundred Thousand Dollars ($100,000.00), to be divided into one hundred thousand (100,000) shares, of the par value of One Dollar ($1.00) per share, with the incorporators and subscribers and officers, and possessing the powers, all as set forth in its Articles of Incorporation, a copy of which, marked Exhibit 'A', is attached hereto and made a part hereof.

"2. Hinckleys agree to subscribe initially for no less than twenty-nine thousand nine hundred ninety-six (29,996) shares of the common capital stock of the Company and to pay therefor a sum of not less than Twenty-Nine Thousand Nine Hundred Ninety-Six Dollars ($29,996.00).

"3. The company hereby grants to Keith Bullock so long as he is employed by the Company, but in no event for a longer period than hereinafter specified, the right and option to subscribe shares on the following basis:

"(a) During the month of January of 1958, 1959, 1960 or 1961, he may subscribe at One Dollar ($1.00) per share up to but not exceeding in the aggregate 10% of the number of shares of the Company owned by Hinckleys, Inc. at the time of his subscription.

"(b) During the month of January of 1962, 1963, 1964, 1965 or 1966, he may subscribe at book value per share, as determined from the books, records and accounts of the Company, shares

"i. which when added to those previously subscribed by him may equal but not exceed ten thousand (10,000) shares, if the total outstanding shares of the Company after the subscription are fifty thousand (50,000) shares or less; or

"ii. if after fifty thousand (50,000) shares of the Company shall have been subscribed additional shares are offered by the Company, he shall have the right to subscribe up to but not exceeding twenty (20) per cent of the shares so offered during the option period.

\* \* \* \* \*

"5. If during the option period which expires February 1, 1961, either Keith Bullock or Raymond Hunter desires to sell any or all of his shares of the Company, he shall first offer them to Hinckleys, Inc. at par or at such lower price as he may be willing to accept from a purchaser ready, able and willing to buy, whichever price would be lower. He shall make the offer to Hinckleys in writing and if Hinckleys does not accept the offer within fourteen (14) days next following the date of delivery of the offer to Hinckleys, the offeror shall be at lib-

**4**

does not plead nor does the record disclose any claim that there was any oral agreement, not merged in the written contract, that his employment should last to the date claimed.

A summary judgment must be supported by evidence, admissions and inferences which when viewed in the light most favorable to the loser shows that, "there is no genuine issue as to any material

erty to sell his share to a purchaser other than Hinckleys, Inc.

"If, during the option period beginning February 1, 1961, and ending February 1, 1966, either Keith Bullock or Raymond Hunter desires to sell any or all of his shares of the Company, he shall first offer them to Hinckleys, Inc. at book value or at such lower price as he may be willing to accept from a purchaser ready, able and willing to buy, whichever price would be lower. He shall make the offer to Hinckleys in writing and if Hinckleys does not accept the offer within fourteen (14) days next following the date of delivery of the offer to Hinckleys, the offeror shall be at liberty to sell his shares to a purchaser other than Hinckleys, Inc.

"If after February 1, 1966, Keith Bullock or Raymond Hunter desires to sell his stock, he may do so but shall give Hinckleys, Inc. the first refusal to acquire said stock by tendering it to Hinckleys in writing at the price a purchaser ready, able and willing to buy has offered. If Hinckleys, Inc. does not exercise its right to acquire said stock within fourteen (14) days after the receipt of the written offer, then the offeror shall be at liberty to sell his stock to a purchaser other than Hinckleys, Inc., and payment for the stock shall be made upon delivery of the stock to the purchaser.

"6. If during the option period which expires February 1, 1961, Hinckleys, Inc. desires to sell any or all of its shares of the Company, it shall first offer them to Keith Bullock and Raymond Hunter at par or at such lower price as it may be willing to accept from a purchaser ready, able and willing to buy, whichever price would be lower. It shall make the offer

to Keith Bullock and Raymond Hunter in writing and if Keith Bullock and Raymond Hunter do not accept the offer to buy all the shares offered for sale by Hinckleys, Inc. within fourteen (14) days next following the date of delivery of the offer to Keith Bullock and Raymond Hunter, the offeror shall be at liberty to sell its shares to a purchaser other than Keith Bullock and Raymond Hunter.

"If during the option period beginning February 1, 1961, and ending February 1, 1966, Hinckleys, Inc. desires to sell any or all of its shares of the Company, it shall first offer them to Keith Bullock and Raymond Hunter at book value or at such lower price as it may be willing to accept from a purchaser ready, able and willing to buy, whichever price would be lower. It shall make the offer in writing and if Keith Bullock and Raymond Hunter do not accept the offer to buy all the shares offered for sale by Hinckleys, Inc. within fourteen (14) days next following the date of delivery of the offer to Keith Bullock and Raymond Hunter, the offeror shall be at liberty to sell its shares to a purchaser other than Keith Bullock and Raymond Hunter.

"If after February 1, 1966, Hinckleys, Inc. desires to sell its stock, it may do so but shall give Keith Bullock and Raymond Hunter the first refusal to acquire all the shares offered for sale by Hinckleys, Inc. by tendering it to Keith Bullock and Raymond Hunter in writing at the price a purchaser ready, able and willing to buy has offered. If Keith Bullock and Raymond Hunter do not exercise their right to acquire all of the shares offered for sale by Hinckleys, Inc. within fourteen (14) days after the receipt of the written offer, then the of-

fact and that the moving party is entitled to a judgment as a matter of law." [2] Such showing must preclude all reasonable possibility that the loser could, if given a trial, produce evidence which would reasonably sustain a judgment in his favor.

Bullock urges two grounds for reversal: (1) the written agreement with its implications is sufficient to support a finding that the company agreed to employ him for more than eight years; (2) the company is estopped from relying on the statute of frauds as a defense.

(1) The written agreement would not support a finding that the company agreed to employ Bullock for the period of time claimed. The only express provision on that question recites that the "Company agrees to employ Bullock as its general manager." It contains no statement whatever on the length of time such employment should last. Absent other controlling fact it is generally recognized that under such a provision either party may terminate the employment at will.[3]

There are other provisions regarding the purchase and sale of company stock which Bullock claims creates ambiguity in the contract and would allow parol evidence on the intention of the parties. He further contends that these provisions and the parol evidence admissible on the intention of the parties thereunder would authorize the court to find by implication [4] or estoppel [5] that the company agreed to employ Bullock for the duration claimed.

Thus, paragraph three of the contract gives Bullock the option to subscribe company stock during the month of January of each of the years of 1958 through 1966 as long as he is employed by the company.

---

feror shall be at liberty to sell its stock to a purchaser other than Keith Bullock and Raymond Hunter.

\* \* \* \* \*

"7. The Company agrees to employ Keith Bullock as its General Manager, \* \* \*."

2. See Utah Rules of Civil Procedure, Rule 56(c), and annotations to that rule and pocket supplement in 9 U.C.A.1953.

3. See 3 Corbin on Contracts 685–689, Sec. 684; Restatement Agency 2d, Sec. 442; 11 A.L.R. 470–471; 100 A.L.R. 835–836, Annotation "In America an indefinite hiring is at will."

4. See 3 Corbin on Contracts, 161–213 "The Process Called Implication" Chapter 25; also pp. 682–683, "Promises of Employer and Employee May be Implied As Well as Express" Sec. 682.

5. See 3 Corbin on Contracts, 685, Sec. 684, where it is said: " \* \* \* Here there is no actual 'meeting of the minds'; and yet there may be a valid contract. Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. In such a case there is a contract in accordance with that understanding. The second party having negligently or intentionally misled the first, is bound by estoppel."

By paragraph five, if Bullock desires to sell any of his acquired shares of company stock he must first offer to sell them to Hinckleys, Inc. By paragraph six, if Hinckleys, Inc. desires to sell any or all of its company shares of stock, it must first offer to sell them to Bullock.

We find no ambiguity which suggests that this contract of employment is not terminable by either party at will, either under these stock purchase and sales provisions or otherwise. Nor does Bullock suggest that he could produce parol evidence to the contrary. Neither the fact that Bullock had an option to subscribe company stock within a specified period so long as he was employed by the company, nor the fact that Bullock agreed to first offer to Hinckleys, Inc. any company stock which he desired to sell, nor the fact that Hinckleys, Inc. agreed to first offer to Bullock any of its stock which it desires to sell, suggests that his employment could not be terminated at will. The fact that his option to subscribe to stock only existed as long as he was employed suggests that either party could terminate such employment at will. The fact that Bullock took this job at a reduction in salary, incurred expense in moving to Salt Lake City, and lost other benefits, would be a reason why he might insist on a provision in the contract for his employment for a specified period of time. However, since he failed to insist on such a recital in the written contract, these facts do not justify the finding that such provisions shall be added to the contract by implications or estoppel. In fact, since the contract did not specify any definite period of time for the duration of such employment, the implications are that either party could terminate the contract at will,[6] and there is definitely nothing to indicate that such provision existed by reason of estoppel. Bear in mind that the estoppel which we refer to now is not the estoppel from reliance on the statute of frauds we discuss hereafter, but is the estoppel referred to in note five.

■. (2) The Company is not estopped from relying on the statute of fraud. That statute provides that every agreement "that by its terms is not to be performed within one year from" the time of its making, "shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the parties to be charged therewith."[7]

This presents an unusual situation. There is a written contract made in January, 1958, after the date of the agreement and just before the employment commenced, reciting that the company agrees to employ Bullock as its general manager, with no recital that the employment shall continue for any specified duration. Had it

6. See note 3.

7. See U.C.A.1953, 25-5-4(1).

contained such a provision, the statute of frauds would have had no application and plaintiff would have had no occasion to claim that the company is estopped from reliance on such statute. So, in order to claim such estoppel, Bullock must rely on an oral agreement which the statute of frauds would make void in order to involve the doctrine of estoppel from reliance on such statute. He must also show that such oral agreement was not merged in the written agreement as is usually the case where, as here, the written agreement covers the question involved. In such case in the absence of ambiguity, parol evidence is not admissible to vary the terms of the written contract or to show the intention of the parties.[8]

Plaintiff Bullock pleads and relies on the written contract. Nowhere in his pleadings, affidavits, depositions or brief does he claim that there was an express oral agreement that the employment could not be terminated by either party within any specified period of time. He apparently claims that such oral agreement arose by implication or by estoppel, the same as he claims such a provision by implication or estoppel under the written contract. All of the cases which Bullock relies on for estoppel are based on an express oral agreement.[9] Under these circumstances we conclude without an express oral agreement to the effect that the contract may not be terminated within one year, the doctrine of estoppel to rely on the statute of frauds has no application to this case.

We therefore conclude that as a matter of law plaintiff Bullock has no ground for recovery and the summary judgment was proper.

Affirmed. Respondent to recover his costs.

CROCKETT, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

8. See Bryant v. Deseret News Pub. Co., 120 Utah 241, 233 P.2d 355; Continental Bank & Trust Co. v. Bybee, 6 Utah 2d 98, 306 P.2d 773; Huber & Rowland Construction Co. v. City of South Salt Lake, 7 Utah 2d 273, 323 P.2d 258.

9. See Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88; Alaska Airlines, Inc. v. Stephenson, 217 F.2d 295, 15 Alaska 272; Fibreboard Products, Inc. v. Townsend, 9 Cir., 202 F.2d 180.