HEATH TECNA CORPORATION,
Plaintiff and Appellant,

v.

ZIONS FIRST NATIONAL BANK,
Defendant and Respondent.

No. 16474.

Supreme Court of Utah.

March 27, 1980.

---

David B. Boyce of Backman, Clark & Marsh, Salt Lake City, for plaintiff and appellant.

John A. Beckstead of Callister, Greene & Nebeker, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Plaintiff Heath Tecna Corporation (hereafter "Plaintiff") appeals from a summary judgment granted to Defendant Zions First National Bank (hereafter "Zions"). We reverse and remand for further proceedings consistent with this opinion.

On July 7, 1975, Zions màde a loan for $20,000 to Elwood G. Norris (hereafter "Norris") and Jon A. Hooper (hereafter "Hooper"), d/b/a Sound Systems Company.

Norris and Hooper signed the note for Sound Systems and Norris and his wife signed "individually and personally". On the same day the Norrises executed a trust deed to Zions covering real property located in Salt Lake County owned by them.

Also on July 7, 1975, Zions took a Security Agreement covering equipment owned by Sound Systems as well as an Inventory and Accounts Receivable Security Agreement to cover the $20,000. The Security Agreement covering the equipment was signed by Norris for Sound Systems, while the Inventory and Accounts Receivable Security Agreement was executed by Norris and Hooper on behalf of Sound Systems.

On July 25, 1975, Norris and Hooper executed a Partnership Borrowing Authorization for and Guarantee of Commercial Loan to Zions. On the same date two Motor Vehicle Security Agreements covering a Pantera automobile were also executed. One recited that it covered a $9,000 note to Sound Systems and the other a $20,000 note to Sound Systems (apparently the note of July 7, *ante*). Only the Security Agreement covering the $9,000 note was perfected by the issuance of a new certificate of title. The Motor Vehicle Security Agreement covering the $9,000 note showed the debtor as Norris and Hooper d/b/a Sound Systems Company. The other such Agreement showed the debtor as Sound Systems Company and was signed by Norris.

Both of these Motor Vehicle Security Agreements had identical future advances or "dragnet" clauses. Each agreement stated that it was granted "to secure all Debtor's present and future debts, obligations and liabilities of whatever nature to Secured Party (the "Obligations"), including the note executed by Debtor to Secured Party in the amount of $_____ and Debtor's obligations hereunder." One of the security agreements then had the sum of $9,000 typed in and the other, the sum of $20,000. A new certificate of title was subsequently issued by the Department of Motor Vehicles showing Zions as a lien holder.

On April 26, 1976, Norris and his wife signed a Continuing Guarantee of Credit in favor of Zions and on behalf of an entity

named Norris and Company, Inc. On July 12, 1976, Norris as president of Norris and Company, Inc., executed an assignment of a statement savings account. On July 13, 1976, Zions took an Inventory and Accounts Receivable Security Agreement from Norris and Company, Inc. On November 18, 1976, Norris as president of Norris and Company, Inc., executed a promissory note in the sum of $60,000. On March 11, 1977, Zions took a General Pledge Agreement signed by Norris for Norris and Company, Inc. together with an Agreement of Accommodation Pledgor signed by Norris individually.

On May 31, 1977, Plaintiff obtained judgment against Norris in the sum of $77,-911.00. Pursuant to said judgment a Writ of Execution was issued. Plaintiff alleges, and Zions admits for the purposes of this appeal only, that the Salt Lake County Sheriff levied on the Pantera automobile on August 18, 1977. Plaintiff indicates in its brief that Norris was designated the keeper of the automobile levied on, but it is clear that a sheriff's sale never took place.

On October 11, 1977, Norris voluntarily turned possession of the Pantera over to Zions. On November 23, 1977, Norris sold the Pantera to a third party. Norris signed the certificate of title as the owner and the lien was released by Zions. The sale of the automobile netted some $10,500 which was turned over to Zions by Norris.

The record reflects that at the time the Pantera was sold, the $9,000 note to Sound Systems had been paid in full and a balance of something over $2,000 remained owing on the $20,000 note to Sound Systems.

After the Pantera was sold Plaintiff instituted this action against Zions alleging, inter alia, that Zions had wrongfully repossessed and sold the Pantera, that Zions had no right to repossess the Pantera in the face of Plaintiff's levy, and that alternatively, if Zions had any right to repossess the Pantera, Zions only had a right to some $2,000 of the sale price, with the remainder properly due Plaintiff.

On March 23, 1979, Zions filed a Motion for Summary Judgment, grounding said Motion on three theories. The first was that Plaintiff "is not a proper party plaintiff and has no standing to bring this action against defendant." Second, Zions "did not sell the 1972 Pantera automobile which is the subject matter of this action and therefore defendant cannot, as a matter of law, be the proximate cause of any damages suffered by plaintiff." And, finally, Zions "had a perfected security interest in said 1972 Pantera which secured debts owing to defendant by Elwood G. Norris on which there was a balance owing at the time of the disposition of said 1972 Pantera in excess of the proceeds realized from such sale. Said security interest had priority over the interest of plaintiff alleged in its complaint and therefore the repossession of said 1972 Pantera by defendant and any subsequent disposition thereof were proper and lawful and plaintiff has no cause of action against defendant." On April 4, 1979, the District Court granted Zions' Motion, and on April 26, 1979, signed a Judgment dismissing Plaintiff's Complaint. No grounds for granting the motion are listed either in the Minute Entry or in the Judgment itself.

In *Livingston Industries, Inc. v. Walker Bank & Trust Company*,[1] we stated:

Summary judgment is proper only if the pleadings, depositions, affidavits and admissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, and the evidence, when viewed in the light most favorable to the loser, must show that there is no genuine issue as to any material fact.[2]

We find no merit in Zions' contentions that Plaintiff had no legally cognizable interest in the Pantera automobile and hence no standing to bring this suit, or that Zions did not sell the automobile and hence could not have been the proximate cause of any damage to Plaintiff. The overriding issue is whether Zions had any perfected security interest in the automobile with precedence

---

**1.** Utah, 565 P.2d 1117 (1977).

**2.** Id. at 1118, citing *Bullock v. Deseret Dodge and Truck Center, Inc.*, 11 Utah 2d 1, 354 P.2d

559; *Tanner v. Utah Poultry and Farmers Co-op*, 11 Utah 2d 353, 359 P.2d 18.

over the interest of Plaintiff in that automobile as a levying creditor.

Zions basically maintains that the future advances clause in the Motor Vehicle Security Agreement extended not only to the loans to Sound Systems Company but also to the $60,000 loan to Norris and Company, Inc.[3]

In analyzing the effect of the future advances clause in the Motor Vehicle Security Agreement, we rely on the same principles enunciated by this Court in *First Security Bank of Utah v. Shiew*, No. 16261, 609 P.2d 952 (1980). *Shiew* involved what is popularly known as a "dragnet" clause in a real property mortgage, and we consider the same principles applicable to future advances clauses in security agreements.

In *Shiew* we adopted what is known as the Hawaii-Kansas Rule in dealing with such clauses. That rule was stated in *Shiew* as follows:

. . . in the absence of clear, supportive evidence of a contrary intention a [security agreement] containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the [security agreement] as providing security therefor.[4]

In the light of this test, it is clear that there are the following genuine issues of material fact which preclude granting of summary judgment on the record as thus far developed in this case. These issues are:

(1) Was the subsequent loan to Norris and Company, Inc. made to the same parties, in essence, as the loan to Norris and Hooper d/b/a Sound Systems Company?

(2) Assuming that the answer to (1) is "yes," did the parties intend that the security given for the loan to Sound Systems would also be security for the loan to Norris and Company, Inc.?

(3) Was the second note "of the same kind and quality or [did it] relate to the same transaction or series of transactions as the principal obligation secured"? (Neither the subsequent advance to Norris and Company, Inc. nor the security taken therefor refers to the security given for the Sound Systems' notes).

With reference to question (2) above, we noted in *Shiew* that:

In *Emporia State Bank v. Mounkes*,[5] the court observed the primary question for determination, where the construction of a mortgage was in issue, was the intention of the parties. Such a decision is based on all the circumstances attending the execution of the mortgage and the nature of the transaction as well as the language of the instrument itself.[6]

This is not to say that the situation may not arise where a future advances clause is so unambiguously drawn that reference to anything other than the language of the clause itself need be made. However, the language present in the future advances clause involved here is of that type which was found to be ambiguous both in the *Mounkes* case and in *Shiew*.

Costs to plaintiff.

CROCKETT, C. J., and MAUGHAN and HALL, JJ., concur.

STEWART, J., dissents.

---

3. While it is clear that the Uniform Commercial Code recognizes the *validity* of future advances clauses (§ 70A–9–204(3), Utah Code Ann., 1953) neither the Commercial Code itself nor prior Utah case law casts any light on how such clauses are to be construed.

4. 609 P.2d at 952.

5. 214 Kan. 178, 519 P.2d 618 (1974).

6. 609 P.2d at 952.