[No. 10595-7-I. Division One. May 31, 1983.]

JOHN WILLIAM GOODPASTER, *Appellant*, v. PFIZER, INC., *Respondent*.

*Preston, Thorgrimson, Ellis & Holman* and *J. Markham Marshall,* for appellant.

*Ferguson & Burdell* and *William B. Moore,* for respondent.

DURHAM, A.C.J.—John William Goodpaster appeals the trial court's summary judgment of dismissal in favor of Pfizer.

In 1968, Pfizer Laboratories (Pfizer),[1] a pharmaceutical company, hired Goodpaster as a professional sales representative. Pfizer provided a salary of $8,000 a year, a car, an expense account and other benefit programs. The contract provided no specific duration of employment. Goodpaster's performance was to be measured by standards established by the company. Goodpaster believed his employment with Pfizer would last as long as he performed satisfactorily.

Pfizer compensated its sales representatives with salaries, bonuses and special awards. A factor in determining compensation was satisfaction of annual sales quotas. The company's Integrated Management System manual explained the bonus plan, and its Incentive Plan Payout Table established the amount of bonus to be received. The bonus was determined by the percentage of quota a sales representative met. The manual expressly stated that the bonus payment was discretionary and further reserved to Pfizer the right to make management decisions that might affect the amount of bonus to be paid.

In December 1978, when Goodpaster had achieved 99.3 percent of his annual quota, Pfizer management issued a directive instructing sales representatives to "hold back"

---

[1]Pfizer Laboratories is a division of respondent Pfizer, Inc.

business for the remainder of 1978. Management personnel recognized the directive would affect the quota system, but nonetheless instructed the sales representatives to follow the instruction. Management personnel did not, however, promise or imply that Pfizer would still pay bonuses as though the sales representatives had met 100 percent of their quotas.

Pfizer placed Goodpaster on probation status in 1979, partly because he failed to make his quota in 1978 and partly due to his substandard work history for the previous 6 years. When Goodpaster's initial probation period expired in July 1979, he had not yet met his probation goals, and Pfizer extended his probation until September 1979. Goodpaster's performance did not improve, however, and he was discharged in October 1979.

On appeal, Goodpaster argues alternatively that his employment contract contained an express promise to pay sales representatives incentive compensation, or that it created an implied obligation to pay. Goodpaster contends that Pfizer's hold–back directive breached this contract and prevented Goodpaster from attaining 100 percent of his 1978 quota. This, in turn, led to his probationary status and, ultimately, resulted in the termination of his employment.

Pfizer responds that the incentive plan did not create an express or implied contract of employment for payment of a specified bonus. Rather, Goodpaster's employment contract was for an indefinite period and terminable at will. Even if an implied contract existed, Pfizer had good cause to terminate Goodpaster's employment and the hold–back directive did not proximately cause Goodpaster's termination. Finally, Pfizer argues that Goodpaster failed to show that the directive breached an obligation to pay the bonus because such an obligation could not be implied from the facts in evidence.

In order to decide the nature of this employment contract, we must consider the totality of the circumstances and the intent of both parties. *Roberts v. ARCO*, 88 Wn.2d

887, 894, 568 P.2d 764 (1977). The existence of an employment agreement, *not* terminable at will, cannot be established solely by subjective understanding or expectations. *See Roberts,* at 894; *Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn.2d 408, 281 P.2d 832 (1955). Even an assurance of steady employment is insufficient. *Gensman v. West Coast Power Co.,* 3 Wn.2d 404, 101 P.2d 316 (1940). It is undisputed that Pfizer employed Goodpaster for an indefinite period. The record, in fact, shows that it was only Goodpaster's subjective understanding that he could work as long as he performed satisfactorily. Thus, this was a contract for employment terminable at will and presented no genuine issue of material fact.

Such an employment contract may, nonetheless, be terminated only for just cause if (1) there is an implied agreement for permanent or steady employment, or (2) the employee gives consideration in addition to the contemplated services. *Roberts,* at 894. There is no evidence in the record that there was an implied contract that could be terminated only for just cause. At best, Goodpaster points to his understanding that he would be employed as long as he did his job well. Such a unilateral understanding is insufficient. The record is also void of evidence that Goodpaster gave consideration in addition to his contemplated services.

Even if there was evidence that Pfizer could discharge Goodpaster only for good cause, the record is replete with facts showing Goodpaster's substandard performance during his last 6 years with Pfizer. Furthermore, it is uncontroverted that Pfizer gave Goodpaster 9 months of probation in which to redeem himself, and that he failed to meet the required goals.

Goodpaster premises his arguments on the assumption that Pfizer had an implied obligation to pay the bonus in 1978. Before a promise to pay a bonus can be enforced, however, a real promise must exist. The existence of the promise depends on the understanding and intent of the parties, business custom, the nature of the employment, the

situation of the parties and the surrounding circumstances. *Roberts,* at 894. Again, much more than the employee's subjective understanding is required. *Roberts,* at 894. Action in reliance upon a supposed promise creates no obligation on a corporation whose promise is illusory. *Spooner v. Reserve Life Ins. Co.,* 47 Wn.2d 454, 287 P.2d 735 (1955). A supposed promise may be illusory because it is so indefinite that it cannot be enforced, or by reason of provisions contained in the promise which make its performance optional or entirely discretionary by the promisor. *Spooner,* at 458.

The record reveals no material evidence that the promise to pay the bonus was definite and certain. Pfizer's written policy statement indicating payment of bonuses is not without qualification. This court must give meaning to all the terms of the policy statement and cannot ignore the qualifications. *Spooner,* at 459. If Goodpaster was induced to work harder as a result of the promise to pay a bonus, he did so "relying on the corporate conscience" and not upon an enforceable contract. *Spooner,* at 459.

In a motion for summary judgment, the court should consider all evidence and reasonable inferences therefrom in favor of the nonmoving party. *Parker v. United Airlines, Inc.,* 32 Wn. App. 722, 649 P.2d 181 (1982). Summary judgment is appropriate only if reasonable men could reach only one conclusion. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 523 P.2d 186 (1974). Based on our review of the record, we conclude that the trial court properly granted summary judgment of dismissal.

SWANSON and SCHOLFIELD, JJ., concur.

Reconsideration denied June 28, 1983.

Review denied by Supreme Court September 23, 1983.