Willard S. ROSE, Plaintiff
and Appellant,

v.

ALLIED DEVELOPMENT COMPANY,
a Utah corporation, Defendant and
Respondent.

No. 19488.

Supreme Court of Utah.

May 13, 1986.

---

Randall N. Skanchy, Brenda L. Flanders, Salt Lake City, for plaintiff and appellant.

James B. Lee, David A. Anderson, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiff Willard S. Rose appeals from a summary judgment in favor of defendant.

Plaintiff was hired by defendant Allied Development Company in August of 1981 as assistant manager of the shoe department of its Murray store, pursuant to an oral employment agreement for an indefinite term. Several months later, in January of 1982, plaintiff's job requirements were increased, and he became responsible for the shoe departments in other stores as well. Sometime between March and June of 1982, Allied promoted him to the position of manager of the shoe department, and he

was required to coordinate the sales promotions of the Murray, Sandy, and Tooele stores.

In July of 1982, plaintiff talked to John Wetsel, his supervisor, about the possibility of attending school while continuing to work. Wetsel told him that as far as he was concerned, he would have no problem with that arrangement "so long as his school obligations did not interfere with his job duties." Wetsel specifically stressed the importance of plaintiff's maintaining his average of forty-five hours per week and insuring that the sales floor was supervised at all times.

Until sometime in August, nothing more was said regarding the likelihood of plaintiff's attending school while continuing to work full-time. At that time, plaintiff and Rayne Johnstun, the assistant manager of the shoe department, who was also attending school, met with Wetsel to review the tentative class schedules each had planned. The schedules were arranged to allow both plaintiff and Johnstun to work an average of forty-five hours per week and to provide supervisory coverage of the sales floor by one of them at all times. Wetsel told them that the schedules "looked fine" and repeated the required conditions he had mentioned to plaintiff at their earlier meeting.

Plaintiff subsequently registered for full-time attendance at Westminster College and incurred expenses of $1,645 for tuition and $97.81 for books.

On October 16, 1982, after having received complaints about plaintiff's performance, specifically the inflexibility of his schedule and his unavailability at peak sales times, Wetsel told him that the schedule was not working out as well as he thought it would. He told plaintiff that he could quit school or quit his job. He also offered him a third option, i.e., that he switch from a salaried position to an hourly position, resulting in a monthly decrease in compensation of approximately $500. However, Wetsel also expressed his discomfort with the possibility of paying plaintiff substantially less for doing essentially the same work. Allied subsequently termi-

nated him, and he brought this action alleging breach of contract, promissory estoppel, contractual wrongful discharge, tortious wrongful discharge, and breach of the implied covenant of good faith and fair dealing.

Allied moved for summary judgment, relying on its continuing right to terminate an employee at will and for any reason under a contract of indefinite duration. The lower court determined that plaintiff's employment with Allied was in fact pursuant to an at-will agreement and granted Allied's motion.

## I

Summary judgment must be supported by evidence, admissions, and inferences which when viewed in the light most favorable to the losing side establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c); *Norton v. Blackham*, Utah, 669 P.2d 857 (1983); *Bowen v. Riverton City*, Utah, 656 P.2d 434 (1982); *Massey v. Utah Power & Light*, Utah, 609 P.2d 937 (1980).

## II

Inasmuch as a determination of the precise nature of plaintiff's employment contract with Allied is the pivotal point on which his other contentions are premised, we shall address this issue first. Plaintiff contends that the lower court erred in its determination that his employment contract was terminable at will. While he concedes that most employment contracts for an indefinite duration are terminable at will, he asserts that his contract falls into one or more of the exceptions to that general rule.

Traditionally, employment at will contracts provided that an employer could terminate an employee for "no cause, good cause, or even cause morally wrong with-

out fear of liability."[1] *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984). However, the employer's absolute right to discharge employees has been somewhat limited by subsequent federal and state legislation. For example, the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), prohibits the discharge of employees based on race, color, religion, sex, or national origin. Similarly, U.C.A., 1953, § 34–35–6 prohibits the discharge of employees based on race, color, religion, sex, national origin, age, or handicap.

Coincidentally, this Court has also recognized exceptions to that general at-will doctrine. For example, in *Bihlmaier v. Carson*, Utah, 603 P.2d 790 (1979), we noted:

[I]n the absence of some further *express or implied stipulation as to the duration of the employment* or of a *good consideration in addition to the services contracted to be rendered,* the contract is no more than an indefinite general hiring which is terminable at the will of either party.

*Id.* at 792 (footnote omitted; emphasis added).

■ In order to decide the nature of this employment contract, we must look at the totality of the circumstances and the intent of both parties. It is undisputed that Allied hired plaintiff for an indefinite period. Further, both parties agree that there was no written formalized agreement. In his deposition, plaintiff responded to the following questions asked by Allied's counsel:

Q. Did you sign any written agreement, employment agreement, contract?

A. No.

Q. Was this oral agreement of employment for any particular duration of time?

A. No.

Q. So you didn't know how long you would be working there?

A. No.

Yet plaintiff contends that this informal at-will employment contract metamorp-

hosed into a contract for a definite term, a contract which could only be terminated for cause. He supports this contention with two brief conversations he had with John Wetsel, claiming that these short exchanges led him to believe that he would not be terminated while he attended school. His understanding from the following conversations was that his job would continue while he attended school so long as he continued to perform his job satisfactorily. As to the initial meeting with Wetsel, plaintiff testified as follows:

Q. Can you tell me what you said to Mr. Wetsel?

A. I just kind of told him that I really had desires to go back—that I would like to go back to school and I thought I could still do it and still perform my job. And he said, well, he said, really, at first glance, as long as you maintain your 45 hours a week and as long as you see that the selling floor is supervised, he said, I've got no problem with it. But he said, when you have got more facts, come back and we'll talk about it. It was a very short meeting. It wasn't a long meeting.

Q. How long would you say it was?

A. Five minutes. It was just touching base. I didn't know what I was going to do, I had nothing concrete, it was just an idea in my mind at that time.

As to the second meeting with Wetsel, Rose testified:

We went over the schedules, and we were able to show him that we—that we could attend—this class scheduling we had come up with would allow us to both of us work our 45 hours a week, and it would also give supervisory level—I mean it would give supervisory coverage to the floor at all times.

And he looked at it and we discussed it back and forth, and he said that it looked fine to him, that as long as we maintained our 45 hours a week and as long as we maintained supervision over the

1. This formulation, known as the "American Rule," was drawn from H. Wood, *Master and Servant* 134 (2d ed. 1886).

selling floor, that he saw no problem with it.

Q. He saw no problem with what, with the schedules?

A. With us going back to school, going ahead and starting school. And he even wished us well.

Q. Did he say anything else?

A. No. That was really the purpose of the meeting. So there really wasn't other matters that I recall being discussed.

 Did plaintiff successfully remove his employment contract out of the at-will category via one of the exceptions we recognized in *Bihlmaier?* We think not. Looking first at whether he had an implied employment agreement that was not terminable at Allied's will, we observe that the existence of an employment agreement not terminable at will must be established by more than subjective understandings or expectations. *Goodpaster v. Pfizer, Inc.,* 35 Wash.App. 199, 665 P.2d 414 (1983); *see also Lasser v. Grunbaum Brothers Furniture Co.,* 46 Wash.2d 408, 281 P.2d 832 (1955). We must look at the alleged "understanding," the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case to ascertain the terms of the claimed agreement. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). We find no implied agreement here. It was only plaintiff's expectation that he would not be terminated as long as he was in school. A review of the record does not provide any evidence that Wetsel's understanding paralleled plaintiff's. There is no evidence that Wetsel intended to forfeit his right to terminate plaintiff, any more than plaintiff intended to forfeit his right to terminate employment with Allied if a better opportunity arose. Plaintiff's understanding of these events, without more, is insufficient to make an implied contract. *Goodpaster v. Pfizer, Inc., supra,* 35 Wash.App. at 416, 665 P.2d 414. To create a new agreement that modified his original employment contract out of the few sentences exchanged between Wetsel and

plaintiff seems difficult at best. It appears that Wetsel made every effort to accommodate plaintiff's desire to return to school. Allied had many other employees who were attending school as well. However, Wetsel's approval of the class schedule and his repeated admonitions about the performance he expected from plaintiff can hardly be construed as a promise of continuous employment. Thus, plaintiff's contention that the substance of these conversations constituted a promise not to terminate him is without merit.

### III

 Was there consideration sufficient to prevent Allied's termination of plaintiff's employment at will? This, of course, must be consideration *in addition* to the services already required and must result in a detriment to the employee and a benefit to the employer. *See* 60 A.L.R.3d 226, 233 (1974). Plaintiff contends that he gave such consideration because he incurred expenses for tuition and books, thus suffering a legal detriment. Despite this contention, however, Allied correctly notes that it did not accrue any benefit by plaintiff's attendance at school. Allied concedes that had it requested plaintiff to attend school or had plaintiff agreed to perform services in addition to what he was already required to do rather than merely continuing his present duties, a different result might be reached here. To satisfy the "good consideration" exception of *Bihlmaier,* plaintiff would have had to offer Allied, at its request, something more than what he was already obligated to do under his employment agreement, not just a continuation of the duties he was required to perform.

 Neither the statements made by Wetsel nor plaintiff's subjective understanding of those statements is adequate justification to find an implied contract or consideration sufficient to fall within the exceptions recognized by this Court. Since plaintiff's employment contract was terminable at will by Allied and inasmuch as Allied never relinquished its right to fire plaintiff without cause, his performance,

whether good or bad, is not at issue in this action. Plaintiff had merely an employment contract of indefinite duration that could be terminated at will by either Allied or plaintiff without cause.

## IV

Plaintiff contends that even if this Court finds that there was not a contract that was terminable only for cause, the doctrine of promissory estoppel should be invoked to allow him to recover for his termination from Allied. He asserts that in reliance on Wetsel's promise to him, he enrolled in school and suffered a detriment thereby. Promissory estoppel is defined in Restatement (Second) of Contracts § 90 (1981) as requiring:

> A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee and which does induce such action or forebearance is binding if injustice càn be avoided only by enforcement of the promise.

To allow plaintiff to recover under the doctrine of promissory estoppel would require more than his subjective understanding that the two brief conversations with Wetsel became a binding promise not to terminate him. It would further require finding that he was justified in assuming, once again from these two conversations, that Allied had promised not to terminate him at will. On this basis, we cannot conclude that he is entitled to recover. For comparison, consider our decision in *Bullock v. Deseret Dodge Truck Center, Inc.*, 11 Utah 2d 1, 354 P.2d 559 (1960). In that case, the plaintiff accepted a job offer and, in reliance upon *his* understanding of the employment contract, sold his house, moved from Texas to Utah, incurred travel expenses, and took a reduction in salary and other benefits. He contended that the employer, in exchange for his sacrifices, had impliedly promised not to terminate him for eight years. Certainly, the equities in *Bullock* favored an estoppel as a way of compensating the plaintiff for his considerable out-of-pocket expenses incurred in reliance on his understanding of the employment agreement. Nevertheless, we refused to override the at-will doctrine to imply a term of employment in the contract to which the employer had not expressly agreed. In the case before us, we cannot find that Wetsel's statements to plaintiff constituted an enforceable promise under which he is entitled to recover.

In view of our determination that plaintiff's contract with Allied remained terminable at will, it is not necessary to address the merits of his other contentions on appeal.

Affirmed. No costs awarded.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.