**Michael Brent HOWCROFT, Plaintiff,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Defendant.**

Civ. No. 88–C–0057A.

United States District Court, D. Utah, C.D.

April 28, 1989.

Matthew B. Durrant, Kimball, Parr, Crockett & Waddoups, Salt Lake City, Utah, for plaintiff.

Floyd A. Jensen, Salt Lake City, Utah, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

The plaintiff, Michael Brent Howcroft, asserts thirteen claims arising from his termination from employment with the defendant, The Mountain States Telephone and Telegraph Company ("Mountain Bell"). Mountain Bell has moved for summary judgment on all thirteen claims. A hearing on the motion was held on December 9, 1988. The court reviewed the oral and written arguments and other documents of record and drafted a tentative opinion. The Utah Supreme Court then entered its decision in the case of *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989), which this court concluded may significantly impact the decision on the state law claims in this case. The court therefore asked counsel to submit briefs taking the rulings of the *Berube* case into account. The briefs were filed and have been carefully considered, and the court now enters its opinion on summary judgment.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is proper only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure; *Barnson v. United States*, 816 F.2d 549, 552 (10th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

The moving party must show entitlement beyond a reasonable doubt, and if an inference can be drawn from which the nonmovant might recover, summary judgment should be denied. *Ewell v. United States*, 776 F.2d 246, 249–50 (10th Cir.1985). However, "the mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, summary judgment is *mandated* if "after adequate time for discovery and upon motion, ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## FACTS

The undisputed facts set forth in the parties' memoranda may be summarized as follows:

1. Howcroft worked for Western Electric, an affiliated company of Mountain Bell, from 1970 to 1977. He began working for Mountain Bell itself in 1978.

2. Howcroft signed written contracts relating to the Mountain Bell Code of Conduct and use of a Mountain Bell VISA credit card. However, he cannot recall signing any document which promised him a definite term of employment.

3. In February 1984, Howcroft was promoted to an assistant manager and was transferred to Mountain Bell's Administrative Services Department under a female supervisor, Cheryl Harris, who concurred in his selection. His duties included supervising implementation of computer-network programs and training subordinates to operate computers. Specifically, he had overall responsibility for installing and operating a Wang computer system at Mountain Bell's Utah headquarters.

4. When Mountain Bell issued the VISA card to Howcroft, it required him to sign an agreement entitled "Use of Mountain Bell VISA Card," which sets forth the conditions governing use of the card (Exhibit "B" to defendant's memorandum).

5. The VISA card agreement specified that the card could not be used for personal purchases. However, Howcroft used the card for personal purchases on various occasions between 1984 and March 1987. He was reprimanded for doing so, and he reimbursed Mountain Bell for most if not all of these purchases.

6. For purposes of this motion only, Mountain Bell accepts the following version of Howcroft's use of the VISA card to charge artwork:

About March 1987, Howcroft mailed a postcard to enter a contest sponsored by a company known as Federal Sterling. He was contacted by a salesman at Federal Sterling who urged him to purchase signed Salvador Dali prints. He informed the salesman that he was not interested in purchasing the artwork, but the salesman persisted, urging him to at least monitor the market. Howcroft agreed to do so, and the salesman then insisted that Howcroft provide a credit card number to verify his identity. Howcroft explained that he had no personal credit card, only the company credit card which could not be charged under any circumstances. The salesman said the company credit card number would satisfy his purposes even though it would not be charged. Relying on these assurances, Howcroft gave the salesman the company credit card number.

Later, Howcroft received a VISA statement which indicated a $2,670 charge to a company called "The Frame Station" in Scottsdale, Arizona. He learned that the charge related to Federal Sterling, so he contacted Federal Sterling and was informed that there had been a clerical error and that a credit would be issued immediately.

Federal Sterling sent a credit letter which Howcroft showed to his supervisor, Harris. (Mountain Bell's procedure required that a cardholder's superior review the VISA statement.) This was the first notice to Mountain Bell of the $2,670 charge. Harris called Federal Sterling and spoke with Sherlyn Burkhart, a clerk, without giving Howcroft an opportunity for further explanation.

Mountain Bell accused Howcroft of having authorized the charge of the artwork with the intent to defraud Mountain Bell. Evidence would show that Federal Sterling had been accused by others of making unauthorized charges to credit cards.

7. Following its inquiry about the artwork charge, Mountain Bell determined that Howcroft should be dismissed. The final decision to dismiss him was made by Gerald Moore, an upper level male manager.

8. Howcroft was dismissed about April 10, 1987. His position was then filled by another male, Mike Ohlsen.

9. On May 20, 1987, Howcroft filed a complaint with the Industrial Commission and the Equal Employment Opportunity Commission (EEOC) and was issued a "right to sue" notice.

10. About August 19, 1987, Howcroft applied for employment with Wang Laboratories, Inc., but was not hired. Wang's representative, Joyce Nikolai, said Howcroft was not hired because he lacked a college degree. Another Wang employee, Greg. Turman, learned from Harris that Howcroft left Mountain Bell "on unhappy terms." However, Turman denied passing this information on to Nikolai, who was responsible for the hiring decision.

## ISSUES OF FACT AND LAW

Mountain Bell maintains that there are no genuine issues of material fact as to any of the thirteen claims and that it is entitled to judgment on each of them as a matter of law. Specifically, Mountain Bell argues that because Howcroft was an employee at will, he has no common law claims arising from his discharge. In addition, Mountain Bell insists that Howcroft has failed to make a showing sufficient to establish the existence of the elements essential to his claims of retaliation, intentional infliction of emotional distress, slander and discrimination on the basis of sex. *See, Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

Howcroft, on the other hand, argues that there are genuine issues of material fact and that these issues involve such questions as: (1) What were Mountain Bell's true motives and actual basis for discharging Howcroft? (2) What were Mountain Bell's and Howcroft's understanding and intent regarding the terms of his employment? (3) Did Howcroft charge the artwork? (4) Did Howcroft willfully violate the Mountain Bell Code of Conduct? (5) Was Mountain Bell's investigation done in a reckless fashion? (6) Did Mountain Bell make statements to Wang damaging Howcroft's job prospects with Wang? (7) Did Mountain Bell slander Howcroft?

These conclusory questions are not easily correlated with the issues of fact which Howcroft seeks to raise regarding each of his claims. Nevertheless, the court has examined each of the claims to determine what factual issues remain. For reasons more fully set forth below, the court finds that Mountain Bell is entitled to partial summary judgment.

## DISCUSSION

As to Howcroft's state law claims, the court must apply the Utah Supreme Court's most recent statements of Utah law. *See Southwest Forest Industries, Inc. v. Sutton,* 868 F.2d 352, 354 (10th Cir.1989); *Robinson v. Volkswagen of America, Inc.,* 803 F.2d 572, 574 (10th Cir. 1986).

Utah follows the "at-will employment rule," which creates a presumption that a personal employment contract is nothing more than an indefinite general hiring which is terminable at the will of either party. *Bihlmaier v. Carson,* 603 P.2d 790, 792 (Utah 1979). However, an employment contract has been held to be terminable only for cause if there is an "implied or express stipulation as to the duration" of the contract or if there is "good consideration in addition to the services contracted to be rendered." *Rose v. Allied Development Co.,* 719 P.2d 83, 85–86 (Utah 1986).

In a recent Utah Supreme Court decision, Justice Durham concluded that other exceptions to the at-will rule may also be warranted. *Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033 (Utah 1989). She explained that the rule is "merely a rule of contract construction and not a legal principle." *Id.* at 1044. "Although in the past the presumption in favor of at-will employment has been difficult to overcome," Justice Durham believed that "rigid adherence to the at-will rule is no longer justified or advisable." *Id.*

Justice Durham stated that the Utah Supreme Court should now recognize the following causes of action as additional exceptions to the at-will rule: (1) a claim for wrongful discharge in violation of public policy; (2) a claim for breach of an express or implied-in-fact agreement to terminate for cause alone; and (3) a claim for breach of an implied duty of good faith and fair dealing in the employment context. *Id.* at 1041–1047. She considered the "public policy" exception to be a threshold issue, although it had no application in that case. *Id.* at 1043. Only Justice Stewart joined in approving the "good faith and fair dealing" exception; Justice Zimmerman thought it should wait for a more appropriate case in which the parties rights and obligations could be addressed at length. *Id.* at 1050, 1051. However, the exception for an "implied-in-fact agreement" was adopted with the concurrence of both Justices Stewart and Zimmerman. *Id.* at 1050, 1051–53.

## APPLICATION OF BERUBE TO THESE FACTS

■ Mountain Bell insists that *Berube* should not be applied retroactively to this case. However, the decision on this motion was still pending when *Berube* was announced. As a general principle, "judicial decisions apply as precedents in all future decisions, whether rendered in cases pending at the time the precedent was created, or filed later." 1B *Moore's Federal Practice* 0.401[3.–2–3] (1988).

"The prospective or retroactive effect of a new rule depends upon the enunciating court's intention." *In re Jones*, 804 F.2d 1133, 1136 (10th Cir.1986). *See Loyal Order of Moose, No. 259 v. County Bd.*, 657 P.2d 257, 264 (Utah 1982). The court's intention may be expressed in, or implied from, its decision. *Massaglia v. C.I.R.*, 286 F.2d 258, 261 (10th Cir.1961).

In *Berube*, the Utah Supreme Court implicitly determined that the decision was to be applied retroactively. The court remanded the case for trial on the newly-recognized theory instead of merely announcing that the theory would be recognized in future cases.

Howcroft's claims arose after the plaintiff's claims in *Berube*. The plaintiff in *Berube* was fired sometime before October 20, 1983, when she filed her complaint. *Id.* at 1037. Howcroft was fired in April 1987. It is inconceivable that the Utah Supreme Court would apply the new theory set forth in *Berube* to claims that arose before Howcroft's claims, yet prevent application of those principles in his case.

Accordingly, this court is bound to consider *Berube* in resolving the present case.

## BREACH OF AN IMPLIED–IN–FACT AGREEMENT

■ In *Berube*, the Utah Supreme Court explained that an implied-in-fact promise is a judicial attempt to give effect to the intent of the parties. The promise may be implied "from a variety of sources, including the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances which show the existence of such a promise." *Id.* at 1044.

Howcroft admits he had no express employment contract promising a definite term of employment when he began working for Mountain Bell. However, he argues that more than an at-will employment arrangement can be implied from Mountain Bell's Code of Conduct, VISA card agreement, procedures, policy manuals and bulletins which were used to encourage high quality performance by employees.

For example, Mountain Bell distributed a "Management Bulletin" which Howcroft received in February 1987. Among other things, the bulletin stated:

> Employees with five or more years of service will not be involuntarily terminated when business conditions permit making a reasonable offer of alternative employment with a U S WEST company. A reasonable offer may entail a move and would pay no less than 70% of the employee's current salary.

> Please consider our incentive offer carefully in terms of your personal and career goals.

(Exhibit "E" to Plaintiff's Memorandum).

Howcroft apparently declined to participate in the management program proposed in the bulletin (Exhibit to Affidavit of Neal Greenhalgh). Nevertheless, "the determination of whether sufficient indicia of an implied-in-fact promise exists is a question of fact for the jury, with the burden of proof residing upon the plaintiff-employee." *Berube* at 1044.

Howcroft refers to an implied-in-fact duty as the basis for a tort claim of negligence, and his pleadings otherwise suggest that there are facts to support a claim for breach of an implied-in-fact agreement. However, his Amended Complaint does not set forth a distinct claim for breach of an implied-in-fact agreement. In these circumstances, the court believes there would be no significant prejudice to Mountain Bell if Howcroft is permitted to file a Second Amended Complaint which adds that newly-recognized contract claim.

The court now proceeds to rule on the causes of action which are set forth in Howcroft's present Amended Complaint.

### Count I (breach of contract)

■ In Count I of his Amended Complaint, Howcroft alleges that Mountain Bell breached the VISA card agreement by terminating him for charging a non-reimbursable expense on the card when he did not do so.

The VISA card agreement provides:

It is understood that a Cardholder is liable to Mountain Bell for any non-reimbursable expense charged to the Card, and in the event that any non-reimbursable expenses are charged, Mountain Bell shall have the right to suspend or revoke use of the Card.

(Exhibit "C" to Plaintiff's Memorandum, paragraph 2).

There is no indication in the agreement that Mountain Bell relinquished any termination rights when it granted Howcroft this "perk." Thus, whether or not Howcroft breached the VISA agreement, Mountain Bell committed no breach of it by firing him.

Mountain Bell is entitled to summary judgment on Count I.

### Count II (breach of contract)

■ Howcroft also interprets the above-quoted language in the VISA card agreement to mean that Mountain Bell could not fire him for misuse of the card, but could only suspend or revoke its use.

The court disagrees with Howcroft's interpretation. The VISA card agreement also states that the "Cardholder agrees to turn in his or her Card to Mountain Bell upon termination of employment." (*Id.*, paragraph 6). The agreement does not evince any intent to modify the duration or nature of Howcroft's employment.

Accordingly, Mountain Bell is entitled to summary judgment on Count II.

### Count III (federal sex discrimination)

■ Howcroft also alleges discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act.

A defendant can establish a basis for summary judgment on a claim of employment discrimination under Title VII in one of two ways. "The first is to demonstrate that plaintiff cannot establish a prima facie case at trial. The second is to demonstrate that plaintiff cannot carry the ultimate burden at trial of proving intentional discrimination, assuming that a prima facie case has been established and that legitimate nondiscriminatory reasons have been presented so as to shift the burden back to plaintiff." *Schwenke v. Skaggs Alpha Beta, Inc.*, 649 F.Supp. 333, 337 (D. Utah 1986), *aff'd*, 858 F.2d 627 (10th Cir.1988).

Howcroft cannot establish a prima facie case of sex discrimination from the evidence that he was fired by a male and replaced by a male. Even if he could establish a prima facie case, Mountain Bell gave a rational, nondiscriminatory reason for his discharge: a history of misusing the company VISA card. Thus, Howcroft would need to show intentional discrimination. However, he has not asserted or alluded to any evidence that female employees would be treated less harshly for credit card misuse. (He does allude to evidence that a female employee was not reprimanded for excessive personal use of the copy machine. However, that does not create a genuine issue of material fact.)

In these circumstances, Mountain Bell is entitled to summary judgment on Count III.

### Count IV (federal retaliation)

In Count IV, Howcroft alleges that, in retaliation for his filing discrimination charges with Utah's Antidiscrimination Division, Mountain Bell refused to allow him to work on its accounts as a potential employee of Wang. Howcroft has not raised a genuine issue as to whether Mountain Bell actually interfered with, or took any retaliatory action regarding, his prospective employment with Wang. (See discussion below, Count VII.) Accordingly, Mountain Bell is entitled to summary judgment on Count IV.

### Count V (state sex discrimination)

In Count V, Howcroft asserts a claim of sex discrimination pursuant to Utah Code Ann. § 34–35–6(1)(a)(i) (1988). As discussed in Count III, the federal sex discrimination claim cannot survive the motion for summary judgment. The state law claim is deficient for similar reasons.

### Count VI (state retaliation)

■ A state law claim of retaliation is asserted in Count VI. "Retaliation" is defined in Utah's Anti–Discriminatory Act as:

> the taking of adverse action by an employer ... *against one of its employees,* applicants or members because he has opposed any employment practice prohibited by [chapter 35] or because he has filed charges, testified, assisted or participated in any way in any proceeding, investigation, or hearing under [chapter 35]

Utah Code Ann. § 34–35–2(15) (1988).

Mountain Bell correctly points out that Howcroft was not its employee when it allegedly tried to prevent Wang from hiring him. Furthermore, Howcroft has not alluded to enough evidence of retaliation to create a genuine issue of fact. To support a retaliation claim, he would need to show that Mountain Bell actually interfered with or took adverse action regarding his prospective employment with Wang and that any action which it did take was *because* Howcroft was trying to protect himself from discrimination. (See Count VII, below.)

Accordingly, Count VI must be dismissed.

### Count VII (interference with prospective economic relations)

■ In Count VII, Howcroft alleges that Mountain Bell interfered with his prospective economic relations by dissuading Wang from offering him employment. The elements necessary to establish such a claim were set forth in *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293 (Utah 1982):

[T]he plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. Privilege is an affirmative defense which does not become an issue unless "the acts charged would be tortious on the part of an unprivileged defendant."

*Id.* at 304.

Wang allegedly notified Howcroft that he had not been hired because Mountain Bell would not let him work on its account with Wang (Paragraphs 39, 40 & 46, Amended Complaint). However, the Wang employee responsible for hiring decisions, Joyce Nikolai, testified that it was Howcroft's lack of a college degree that prevented him getting the new job and that she never communicated with anyone at Mountain Bell concerning Howcroft's prospective employment.

The material facts to support this claim are not at issue because Howcroft relies mainly on unsubstantiated hearsay to support his position.

In any event, Mountain Bell would be privileged in refusing to let Howcroft return frequently to review records at its premises, where he would have convenient access to Mountain Bell's valuable equipment and would be in direct contact with his former supervisor and fellow employees. It would be reasonable to assume that after being fired, Howcroft might be hostile towards Mountain Bell.

For these reasons, Mountain Bell is entitled to summary judgment on Count VII.

### Count VIII (intentional infliction of emotional distress)

■ Count VIII is a claim for the intentional infliction of emotional distress based on Mountain Bell's conduct in terminating him and in dissuading Wang from hiring him.

This claim must be dismissed because, under the facts asserted by Howcroft, there is no evidence of "outrageous and intolerable" conduct that offends the gen-

erally accepted standards of decency and morality. *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344 (1961). "While termination can be an emotionally distressing event in one's life, mere termination alone does not constitute the intentional infliction of emotional distress." *Larson v. SYSCO Corporation*, 767 P.2d 557, 561 (Utah 1989). *Also see Amos v. Corporation of Presiding Bishop*, 594 F.Supp. 791, 830–31 (D. Utah 1984). Howcroft also asserts emotional distress due to Mountain Bell's interference with his prospective employment with Wang but, as discussed above, that claim cannot stand.

### Count IX (bad faith)

In *Berube*, only two of the Utah Supreme Court Justices were willing to recognize an implied duty of good faith and fair dealing in an employment contract. A third, Justice Zimmerman, stated that:

> Until we have had a better opportunity to consider the minimum rights and obligations that inhere in the employment relationship, as we did in *Beck* [*v. Farmers Ins. Exchange*, 701 P.2d 795 (Utah 1985)] with respect to first-party contracts of insurance, I would reject invitations to create this cause of action.

*Berube* at 1052.

Thus, the Utah Supreme Court has not yet recognized such a duty in the context of at-will employment. Although it might do so given the proper facts, we are not convinced that Howcroft has better facts or would attain any different result than the plaintiff in *Berube*.

Accordingly, Mountain Bell is granted summary judgment on Count IX.

### Count X (recklessness and negligence)

In Count X, Howcroft alleges that Mountain Bell recklessly and negligently dismissed him "for cause" without conducting a reasonable investigation into the facts behind his purported credit card abuse.

As previously noted, the court believes Howcroft might state a claim for breach of an implied-in-fact agreement under *Berube*. However, Justice Zimmerman noted in his concurring opinion that "the implied-in-fact cause of action is grounded in contract, not tort." *Berube* at 1052.

The Utah Supreme Court has not yet recognized tort remedies for wrongful termination. If the employment was at-will, there are no common law remedies. If the employment was terminable only for cause, the remedies are those for contract breaches. See *id.* at 1053.

Thus, Howcroft's recklessness and negligence claim must be dismissed.

### Count XI (breach of contract)

In Count XI, Howcroft asserts that Mountain Bell breached an implied covenant to exercise reasonable care if it undertook to dismiss him "for cause." This seems to be a variation of the "implied duty of good faith and fair dealing" which the Utah Supreme Court has not yet recognized in an employment context. (See Count IX, above.) Therefore, Count XI should likewise be dismissed.

### Count XII (defamation by unnamed employees)

In Count XII, Howcroft alleges that Mountain Bell "caused or allowed to be disseminated" certain false, defamatory information concerning his dismissal. However, Howcroft has not alluded to any evidence that the source of these rumors was a Mountain Bell employee acting within the scope of employment or in furtherance of a duty owed to Mountain Bell. For this reason, Mountain Bell is entitled to summary judgment on Count XII.

### Count XIII (defamation by supervisor)

In Count XIII, Howcroft alleges that Mountain Bell is liable for his supervisor's communication to Moore, the management person who made the final termination decision, that Howcroft had improperly charged artwork to the VISA and that company computer equipment was found in his home. Mountain Bell insists that there can be no "publication" of communications between agents of the same corporation. However, the court believes that Utah

would follow the contrary view, as expressed in the *Restatement (Second) of Torts:*

> The communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal and this is true whether the principal is an individual, a partnership or a corporation.

*Restatement (Second) of Torts* § 577 comment i (1977).

> Professor Keeton agrees:

> There may be publication to any third person ... It may be made to the defendant's own agent, employee or officer, even where the defendant is a corporation.

*Prosser and Keeton on Torts* 798 (5th ed. 1984).

Even if there was a "publication," Mountain Bell argues that it was privileged because the publisher and the recipient had an interest or duty in the subject, and the communication was made in the performance of that duty. *See, Sowell v. IML Freight, Inc.*, 30 Utah 2d 446, 519 P.2d 884, 885 (1974).

Howcroft points out that the privilege is a conditional one. He says any privilege was destroyed by Mountain Bell's recklessness in failing to conduct a more thorough investigation into the VISA card incident. "[Reckless conduct may be evidenced in part by failure to investigate thoroughly and verify the facts ... particularly where the material is peculiarly harmful or damaging to the plaintiff's reputation or good name.]" *Babb v. Minder*, 806 F.2d 749, 755 (7th Cir.1986).

Because factual issues remain as to whether the privilege was lost through recklessness, Mountain Bell is not entitled to summary judgment on Count XIII.

## CONCLUSION

Mountain Bell's motion for summary judgment is therefore denied as to Count XIII but granted as to Counts I through XII. In addition, Howcroft is granted leave to file a Second Amended Complaint which adds a claim for breach of an implied-in-fact agreement to terminate him only for cause.